## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **vs.** | * | **Case No. 23-cr-00229-CJN** |
| | * | |
| **TAYLOR TARANTO**, | * | |
| **Defendant** | * | |
| | * | |

**ooOoo**

## TAYLOR TARANTO'S SENTENCING MEMORANDUM

A sentence of time-served (nearly 23-months of pretrial detention) as recommended by the Probation Officer is sufficient to comply with the purposes of sentencing, as required by 18 U.S.C. § 3553(a).[1] Indeed, considering the First and Second Amendment interests that are implicated in the offenses of conviction as well as the mitigating circumstances present in the case, a sentence of time-served is "greater than necessary" to afford just punishment, deter, protect the public and provide Mr. Taranto with needed rehabilitative services. *Id.*

### A.    Mr. Taranto's History and Characteristics Merit a Time-Served Sentence

This is Mr. Taranto's first criminal conviction. He stands convicted of nonviolent offenses. He did not engage in any violent conduct and did not destroy any property. Mr. Taranto is a loving and engaged father and a devoted and committed husband. He has been married for more than 15 years and has two children.

---

[1] Mr. Taranto was detained pretrial from June 29, 2023 until May 22, 2025, when the Court ordered him released after the trial. Thus, he served 22 months and 23 days in pretrial detention. Factoring in the 54-days annual good-time credit he would receive under 18 U.S.C. § 3624(b), he would be required to serve 22.95 months on a 27-month term of imprisonment. *See United States v. Fowler*, 948 F.3d 663, 670 (4th Cir. 2020) (district court may properly consider the potential impact of good-time credits when tailoring a sentence).

The Court was able to assess his wife's character, positive influence and the love and support she provides to her husband when she testified at the trial. Since the Court released him on May 22, 2025, Mr. Taranto has been a lawful and productive citizen. As the Court well knows, family support and post-offense rehabilitation are excellent indicators that a person will not recidivate and will live a productive life after a conviction. *See Pepper v. United States,* 562 U.S. 476, 492 (2011) (family ties and support and postsentencing rehabilitation bear directly on the District Court's overarching duty to "impose a sentence sufficient, but not greater than necessary," to serve the purposes of sentencing under § 3553(a) and "sheds light on the likelihood that [defendant] will engage in future criminal conduct.").

Mr. Taranto is an honorably discharged disabled veteran. He has lived in Washington State for much of his adult life, save when he was in the U.S. Navy, where he was deployed to Iraq and served honorably for over six years. As the Court heard in the video played by the government on the last trial date, Taylor Taranto is a good and thoughtful person who has sought to use humor to help himself and his fellow veterans, many of whom suffer from PTSD as he does. His engagement with his fellow veterans helped at least one of them from committing suicide. His dark and quirky humor is a direct result of his service to his country. He has actively worked to address the PTSD that resulted from trauma experienced during his military service.

The lengthy period of pretrial detention with the limited services, away from his family as well as the unsanitary conditions including growing black mold that prevail in the DC Jail is a factor that the Court may also take into account in determining the sentence to impose. *United States v. Smith*, 27 F.3d 649, 655 (D.C. Cir. 1994) (mitigating factors "unrelated to moral blameworthiness" may be grounds for sentencing departures where circumstances cause "a fortuitous increase in the

severity" of a person's sentence).[2]

### B.    The Offenses of Conviction Are Non Violent and Implicate Constitutional Considerations

Mr. Taranto stands convicted of two D.C. Code gun offenses involving licensure violations. The firearms and ammunition were all legally purchased in the state of Washington. He was not charged or convicted of using or the firearms in any manner. He did not have any firearms on his person and did not otherwise use the firearms. Indeed, the firearms and ammunition were contained in a locked backpack reflecting that he recognizes the care with which firearms should be handled.[3] While the Court rejected the statutory and Second Amendment arguments presented by Mr. Taranto regarding these charges, those issues mitigate the offense conduct.

The sole federal offense, 18 U.S.C. § 1038(a) ("False information and hoaxes") of which Mr. Taranto stands convicted also raises constitutional issues as applied to him in this case. By definition, the federal hoax charge did not involve an actual threat to cause injury to any person or property. And Mr. Taranto's conduct did not in fact cause injury to anyone or damage any property. Significantly, by the time he was charged with the offense in February 2024, the government well knew that at the time of the alleged hoax he was not in possession of any explosive devices or materials from which he could make an explosive device.[4]

---

[2] A Memorandum from then-Acting US Marshal Lamont Ruffin, 11/1/2021, found that during an inspection of the DC Jail, the Marshal found that "that conditions there do not meet the minimum standards of confinement" and detailed deplorable, unsanitary and unhealthy conditions.

[3] While the Court rejected the argument that Mr. Taranto's conduct in possessing firearms in a locked container in the van, which was his dwelling place at the time did not violate 22 DC Code 4504(a)(1) those circumstances also mitigate the severity of his conduct.

[4] The false hoax was first charged in a superseding indictment filed on February 14, 2024 (ECF 45), nearly eight months after the false statement had allegedly been made. Significantly, he

More importantly, the alleged statements which underlie the false hoax charge were made while Mr. Taranto was live-streaming a 90-minute video wherein he was expressing a number of opinions about current events and making statements deemed by him and some of the members of his audience to be of a humorous nature. During the live-stream he did not communicate any threats *directly* to any person or entity. The statements underlying the charge were not explicit. And while Taranto mentioned the National Institute of Standards and Technology ("NIST") during his live-stream, he was nowhere near Gaithersburg, Maryland where the NIST is located. Indeed, the Capitol Police analyst who watched the live-stream expressed uncertainty that Mr. Taranto actually planned to carry out any threats. This assessment is supported by the fact that the NIST was not evacuated and no law enforcement personnel were sent to arrest Mr. Taranto, whose exact location at the National Harbor and in Alexandria, Virginia he was broadcasting at the time.

His statements amounted to a handful of phrases, which when taken together were determined by the Court to amount to a false threat, in violation of the statute. At trial, the evidence presented showed that Mr. Taranto had been live-streaming First Amendment content on a regular basis for several years.

In sum, the First and Second Amendment interests implicated in the case mitigate the punishment to be imposed.

**C.    Sentencing Guidelines Calculation - U.S.S.G. §2A6.1 (Hoaxes).**

Mr. Taranto objects to the guideline calculation set out in the Presentence Report. While he believes his guideline range should be 0 to 6 months for purposes of sentencing his objections are

---

superseding indictment was returned after Mr. Taranto had rejected a plea offer to unrelated misdemeanor charges.

immaterial as he has already served nearly 27 months, which is the high-end of the range calculated in the PSR.

Mr. Taranto objects to the imposition of a 4-level upward adjustment for a "substantial disruption of government services" as the offense of conviction, which took place on June 28, 2023 did not cause a substantial disruption of services. The government seeks to impose this enhancment based on his arrest the following day, while he was live-streaming while walking through the Kalorama neighborhood. The FBI agent who arrested Taranto on that day testified that he had done so in connection with a warrant issued for January 6 misdemeanors and not in connection with any "car bomb" as stated in the PSR ¶28.

He also believes that he qualifies for an acceptance of responsibility reduction pursuant to Application Note 2, U.S.S.G. §§ 3E1.1(a) as he went to trial to challenge the constitutionality of the charges as applied to him.[5]

Under his calculation, his total offense level would be 10, with a sentencing range of 6 to 12 months for a defendant with a Criminal History Category I.[6]

Mr. Taranto does not object to the DC Voluntary Sentencing Guidelines calculation set out in the PSR which provide the Court with complete discretion and do not require any term of

---

[5]    Application Note 2 provides: "Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)."

[6]  Base offense level, § 2A6.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
    Acceptance of Responsibility, § 3E1.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2

imprisonment.[7]

Mr. Taranto does object to the allegations set out in the PSR at ¶¶14, 16, 17, 21 and 22 as the evidence presented at trial contradicts to those allegations in material respect. For example, as to ¶22, the evidence presented at trial was that Piney Branch Elementary School event had been held at that school as a result of a permit obtained by a Maryland resident; the school was not selected by Mr. Taranto.

### D.    Avoiding Unwarranted Disparity - Section 3553(a)(6)

None of the cases cited by the government in its sentencing memorandum nor reviewed by counsel after research involve the type of mitigating circumstances present in this case. No cases involve circumstances where the defendant did not communicate the "hoax" or "false threat" *directly* to a person or an entity. No case involves circumstance where the "threat" was not explicit. Here, in contrast, the several phrases spoken by Mr. Taranto had to be combined to interpret the words as a threat. None of the cases involved the type of First Amendment implications involved in this case, with Mr. Taranto having had a documented history of public live-streaming of First Amendment content.

---

[7] Application of the DC Sentencing Guidelines allow for a probationary sentence and no requirement that the sentences for the DC Code gun offenses be consecutive. Moreover, "[b]y design, the Voluntary Sentencing Guidelines are entirely voluntary, and judges are free to apply or ignore them as they see fit without interference by this Court. . . .Whether ... a trial judge scrupulously follows, outrageously flouts or clumsily misapplies the sentencing guidelines is simply none of our appellate business, unless ... such flouting or misapplying should coincidentally trigger one or more of our more limited and traditional reasons for reviewing a sentence." *Speaks v. United States,* 959 A.2d 712, 720 (D.C. 2008) (internal citations omitted). *See also* DCVSG § 5.3 ("The Guidelines are voluntary. . . . There are no sanctions for failing to follow the Guidelines and any lawful sentence is not appealable based on whether or not it complies with the Guidelines. As a consequence, a judge retains total discretion to impose any lawful sentence").

As previously argued (and rejected by the Court) this case presents more like "The War of the Worlds" radio broadcast by Orson Welles than any reported case where a §1038 offense has been charged, albeit with substantially less mass panic than the Welles' broadcast. Thus, this case provides unwarranted disparity in a mitigating manner.

## CONCLUSION

Under all the circumstances present in this case, and pursuant to 18  U.S.C. § 3553(a), the Court should impose a sentence of time-served. Such a sentence is reasonable and provides just punishment, protects the public and provides needed rehabilitation. Mr.  Taranto's history and characteristics and the nature and circumstances of the offense reflect that any further imprisonment would be "greater than necessary" under § 3553(a). By every applicable standard, a sentence of time-served is consistent with the "uniform and constant. . . federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue." *Koon v.  United States*, 518 U.S. 81 (1996)

Respectfully submitted,

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391
chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served via ECF on all counsel of record this 30th day of October, 2025.

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**