**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CASE No. 23-cr-229 (CJN)** |
| | * | |
| **TAYLOR TARANTO,** | * | |
| **Defendant.** | * | |

---

**DEFENDANT'S MOTION TO ELIMINATE THE CYBERCRIME-MANAGEMENT CONDITION OF SUPERVISED RELEASE**

Defendant Taylor Taranto, through undersigned counsel, respectfully moves this Honorable Court pursuant to 18 U.S.C. § 3583(e)(2) to eliminate the cybercrime-management condition of his supervised release. The condition requires Mr. Taranto to "participate in cyber crime management," to "inform [his] probation officer of all computer devices possessed or accessible to [him]," and bars him from "acquir[ing] or access[ing] any new or additional computer devices unless approved by [his] probation officer." TR. at 36.[1] That condition carries a rationale — the detection and control of covert, deceptive, computer-based criminality — that does not match Mr. Taranto's offense conduct. He broadcast the statements underlying his conviction openly and publicly, under his own identity, to an audience he had cultivated for years. The Court may correct that mismatch now, on an individualized assessment of the condition's appropriateness, without any showing of changed circumstances.

---

[1] Unless otherwise specified, TR refers to the Transcript of the Sentencing Hearing held in this case on 10/30/25.

## INTRODUCTION

On October 30, 2025, this Court sentenced Mr. Taranto to time served and 36 months of supervised release. TR. at 35. Among the conditions imposed was participation in "cyber crime management," including device disclosure and a prohibition on acquiring or accessing new computer devices without the probation officer's approval.[2] *Id.* at 36. The Court declined, however, to impose the social-media restrictions that Probation had proposed, electing not to "prohibit [Mr. Taranto] from using, downloading or otherwise accessing social media." *Id.* And the Court expressly invited Mr. Taranto to return with proposed modifications, stating that it was "happy to hear from [counsel] on any modifications you would like in the future, if it turns out that one or more of these conditions are particularly unworkable for you." *Id.* at 38.

The "cybercrime management" label addresses — secrecy, concealment, fraud, and the exploitation of online anonymity — that has nothing to do with Mr. Taranto's conduct

---

[2] The Court spelled out the terms of the cyber-crime management condition:

> You are also ordered to participate in cyber-crime management. You will inform your probation officer of all computer devices possessed or accessible to you. You will not acquire or access any new or additional computer devices unless approved by your probation officer.
>
> I am not going to impose the social media restrictions proposed by probation. That is to say, I'm requiring that you participate in cybercrime management, that you inform the probation officer of the computer devices that you possess or access, but I am not going to prohibit you from using, downloading or otherwise accessing social media.

TR at 36.

in the count of conviction. For example, cyber-crime management conditions have been upheld to prevent concealment- or exploitation-based crimes, not public broadcasts. *See, e.g., United States v. Kunz*, 68 F.4th 748, 765 (2d Cir. 2023) (upholding a condition that specifically barred use of services that "conceal or spoof" the defendant's IP address, reflecting a judicial concern with anonymizing/concealing conduct, not public broadcasting); *United States v. Voelker*, 489 F.3d 139 (3d Cir. 2007) **(**vacating lifetime ban on internet use). In *Voelker,* the Third Circuit framed the harm sought to be prevented by computer restrictions during supervised release as centered on "anonymous access" enabling "abuse and victimization.," thus framing the harm in terms of anonymity rather than open, identifiable public communication. 489 F.3d at 145. Mr. Taranto's offense was a public broadcast, not a clandestine computer crime. A condition designed to police covert internet use is therefore a greater deprivation of liberty than is reasonably necessary to serve the sentencing goals the Court identified.

## FACTUAL BACKGROUND

Following a bench trial, the Court convicted Mr. Taranto of one count of false information and hoaxes under 18 U.S.C. § 1038(a), two counts of carrying a pistol without a license, and one count of unlawful possession of ammunition. TR at 3. Only the hoax count is a federal offense; the firearms counts are D.C. Code offenses. *Id.* at 16. The Court calculated an offense level of 16 and a Criminal History Category of I, yielding a range of 21 to 27 months, and imposed 21 months on the hoax count — a sentence equivalent to the roughly 22 months Mr. Taranto had already served in pretrial detention. *Id.* at 35

The conduct underlying the hoax conviction was a public broadcast. Mr. Taranto made the statements at issue during a 90-minute livestream. *Id.* at 25. As counsel explained without contradiction, Mr. Taranto "held himself out for many years as someone who broadcasts First Amendment content," "had several channels that he used," and "had an audience with whom he interacted." *Id.* at 25. The Court found that his statements suggested "that his van was rigged with explosives," which "promoted a substantial law enforcement response." *Id.* at 32. It also found that Mr. Taranto "didn't have a bomb or other explosive device," "didn't take steps to detonate a device," and "didn't do violent activities," and that while his conduct was "serious," it was "far from egregious or the most serious I have seen." *Id.* at 32-33.

The Court's assessment of Mr. Taranto's history and characteristics was favorable. He has no criminal convictions, an honorable military discharge, and complied with his conditions of release pending sentencing. *Id.* at 33. The Court found that Mr. Taranto did not pose "a significant risk of recidivism." *Id.* The respect-for-law and protection of the public interests that the Court articulated were tied to public expression: Mr. Taranto should not be making statements that cause law enforcement to believe that there is a possibility that a bomb might be set off at a federal facility. *Id.* at 33-34.

**THE LAW**

A court "may . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term," after considering the enumerated factors in 18 U.S.C. § 3553(a); (e)(2). The Sentencing Guidelines restate that authority: at any time before the term expires, "the court may modify, reduce, or enlarge

the conditions of supervised release whenever warranted by an individualized assessment of the appropriateness of existing conditions," and "is encouraged to conduct such an assessment in consultation with the probation officer." U.S.S.G. § 5D1.4(a). The factors governing that individualized assessment "are the same factors used to determine whether to impose a term of supervised release" in the first instance. U.S.S.G. § 5D1.4 cmt. n.1(A).

Any discretionary condition, whether imposed at sentencing or retained on modification, must satisfy § 3583(d): it must be "reasonably related" to the § 3553(a) factors and must "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes of deterrence, public protection, and rehabilitation. 18 U.S.C. § 3583(d); accord U.S.S.G. § 5D1.3(b). The D.C. Circuit has construed the deprivation-of-liberty clause as "a 'narrow tailoring requirement" that, because it is tied to deprivation of liberty, "in effect require[s] the court to choose the least restrictive alternative." *United States v. Malenya*, 736 F.3d 554, 559-60 (D.C. Cir. 2013).

## I. The Court May Modify the Condition on an Individualized Assessment of Its Appropriateness

Section 3583(e)(2) authorizes modification "at any time" before the term expires and conditions it on nothing more than consideration of the enumerated § 3553(a) factors and compliance with the applicable Rules of Criminal Procedure. 18 U.S.C. § 3583(e)(2). The Guidelines confirm that the operative test is "an individualized assessment of the appropriateness of existing conditions." U.S.S.G. § 5D1.4(a). Neither the statute nor the Guidelines requires a defendant to show new or changed circumstances before the court may act.

Courts in this District have read the authority exactly that way. In *United States v. Hill*, 959 F.Supp.2d 158 (D. D.C. 2013), the Court held that the only statutory requirements for modification are that the district court consider the listed § 3553(a) factors, follow the procedure outlined in Fed. R. Crim. P. 32.1, and ensure that the modified conditions are consistent with the requirements applicable to all conditions of supervised release. 959 F. Supp. 2d at 162. The court emphasized that conditions of supervised release "intentionally are subject to change as an offender's situation or . . . conduct . . . or the law . . . warrant." 959 F. Supp. 2d at 165 n.10.

## II. The "Cybercrime Management" Rationale Does Not Fit Mr. Taranto's Offense Conduct.

A computer-related condition is reasonably related to the offense only where the defendant used a computer to facilitate the crime. In *United States v. Burroughs*, 613 F.3d 233 (D.C. Cir. 2010), the D.C. Circuit vacated computer-monitoring and internet-logging conditions as "plainly out of sync with the relevant factors" because the defendant "did not use a computer to facilitate his crimes." 613 F.3d at 242. The Court rejected the notion that the general utility of the internet to wrongdoers could justify such a condition: "That an offense is sometimes committed with the help of a computer does not mean that the district court can restrict the Internet access of anyone convicted of that offense." 613 F.3d at 243. Reading the Guidelines' computer-restriction provision — which authorizes such limits "only 'in cases in which the defendant used such items" — the court held that computer restrictions are not categorically appropriate in cases where the defendant did not use them to facilitate his crime. 613 F.3d at 243; see U.S.S.G. § 5D1.3(b)(3)(G).

The cases that sustain device-disclosure and monitoring conditions confirm the mismatch here. They involve concealed, deceptive, computer-based conduct. In *United States v. Laureys*, 653 F.3d 27 (D.C. Cir. 2011), the D.C. Circuit upheld computer conditions precisely because the defendant "used the internet to facilitate criminal sexual conduct with minors," expressly distinguishing *United States v. Burroughs*, *supra,* on the ground that Burroughs did not use a computer to facilitate his crimes, but Laureys did. *Laureys*, 653 F.3d at 35. In *United States v. Bernier*, 322 F. Supp. 3d 143 (D.D.C. 2018), the Court sustained computer-and-internet monitoring because the defendant "forged documents . . . with the use of a computer" in committing the false-statements offense, and continued to create "false medical documents online" and "false letterhead" — covert fabrications "similar in nature to the criminal conduct underlying [his] conviction." 322 F. Supp. 3d at 146, 161. That is the paradigm the cybercrime label addresses: the offender who exploits the computer as a hidden instrument of deception.

Mr. Taranto's conduct is the opposite. He did not conceal anything. He broadcast his statements openly and publicly, during a 90-minute livestream, under his own identity, to an audience he had cultivated across several channels over many years. TR at 25. His offense was a public false alarm carried out through a modern broadcast medium — conceptually a traditional public-threat or hoax offense, not the clandestine, anonymity-dependent computer criminality that justified the monitoring conditions in *Laureys* and *Bernier.* Under *Burroughs*, the incidental fact that a computer was the broadcast tool cannot support a cybercrime-management condition. *Burroughs,* 613 F.3d at 243.

### III. The Cyber-Crime Management Condition Does Not Comport with the § 3553(d)(2) Narrow Tailoring Requirement

Because § 3583(d)(2) imposes a "narrow tailoring requirement" that "in effect require[s] the court to choose the least restrictive alternative," a condition must do more than relate to a sentencing goal in the abstract; the Court "must weigh the consequences for the defendant's liberty against any likely achievement of the statutory purposes." *United States v. Malenya*, 736 F.3d 554, 559-60 (D.C. Cir. 2013). A condition justified only by a generic label or an undifferentiated risk of reoffense fails that test. In *Malenya,* the D.C. Circuit held that characterizing conditions as "the standard conditions that are imposed in these cases," or as necessary to "minimize the risk" of reoffense, ignores the balancing of goals against the defendant's liberty, as required by § 3583(d)(2). 736 F.3d at 560. The court likewise rejected but-for reasoning — that the internet enabled the offense — as a justification, warning that such logic would permit "bans on reading newspapers" or "eyeglasses" and reaffirming that "the mere possibility" of internet misuse "is inadequate to justify an internet restriction." 736 F.3d at 560–61. Conditions must instead be matched to demonstrated conduct, not speculation. 736 F.3d at 561.

Applied here, the sentencing objectives the Court identified were protection of the public and respect for the law against future harmful public broadcasts — ensuring that Mr. Taranto not again make statements that cause law enforcement to believe that there is a possibility that a bomb might be set off at a federal facility. TR at 33-34. Without conceding that such a purpose is not prohibited as a First-Amendment prior restraint, a cybercrime-management condition — device disclosure and a bar on acquiring or accessing new computer devices without approval TR at 36 — is a poor and overbroad fit for that concern. It restricts the ordinary instruments of modern life that Mr. Taranto is not

shown to have abused, while doing little to address the specific risk of a future public hoax. The Court recognized as much when it declined to impose Probation's proposed social-media restrictions. TR at 36.

The Court's own findings that Mr. Taranto does not present "a significant risk of recidivism" and has no prior convictions (TR at 33), and on this record, the cybercrime-management condition imposes a greater deprivation of liberty than is reasonably necessary, and the least-restrictive-alternative principle of *Malenya* supports its elimination.

## CONCLUSION

For the foregoing reasons, Mr. Taranto respectfully requests that this Honorable Court eliminate the cybercrime-management condition of supervised release and grant any other relief the Court deems just and proper.

Respectfully submitted,

/s/

**Carmen D. Hernandez**
Bar No. MD 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391; chernan7@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that the instant notice was served via ECF on all counsel of record this 3RD day of August 2026.

/s/

**Carmen D. Hernandez**